Henry L. Wilson and Geraldine L. Wilson, his wife; and James A. Podobnik and Kathleen B. Podobnik, his wife, Appellants *v.* Western Pennsylvania Water Company, Appellee.

Argued May 4, 1981, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Charles E. Boyle,* with him *William R. Bishop, Jr., Bishop & Boyle, P.C.,* for appellants.

*Frank C. Carroll, P.C.,* for appellee.

OPINION BY JUDGE MACPHAIL, July 2, 1981:

Henry and Geraldine Wilson and James and Kathleen Podobnik (Appellants) appeal from an order of the Court of Common Pleas of Washington County which dismissed Appellants' complaint in equity. The equity action had challenged the legality of and sought an injunction relative to the condemnation of easements by the Western Pennsylvania Water Company (Appellee) for the installation of a water line across Appellants' properties.

The procedural history of this case is complex. On November 8, 1979 Appellants filed a complaint in equity with the court of common pleas challenging the exercise of the power of condemnation by Appellee and requesting that the court enjoin Appellee from carrying out its condemnation resolution. The court had approved the filing of surety bonds by the Appellee, apparently over Appellants' objection, on November 5, 1979. On January 31, 1980, due to Appellants' belief that construction was imminent, Appellants filed a petition for a rule to show cause why a preliminary injunction should not be issued enjoining construction. The court, per President Judge SWEET, after a conference in chambers ordered a hearing on the rule to show cause, stating therein that "[t]he real question which should be answered prior to the Condemnor actually entering upon the real estate of the Condemnee is whether there is any damage to the Condemnee which cannot be compensated for in money as provided by the Bonds of Surety approved by Judge GLADDEN and the undersigned." After hearing oral argument, the court, in an undated

order filed on March 7, 1980, ruled that the *petition for a rule to show cause* be dismissed. In addition, the court ordered that Appellants be "remitted to the normal procedure for the ascertainment of damages and compensation of these from the bond heretofore directed."

Discovery proceedings continued thereafter relative to the complaint in equity and on May 1, 1980 trial on the complaint was set for July 24, 1980 before Judge TERPUTAC. On May 16, 1980, however, a rule was issued, upon petition of Appellee, for Appellants to show cause why their complaint should not be dismissed.[1] In essence, Appellee requested that the court clarify that its March 7 order had also dismissed the *equity complaint* insofar as Appellants were "remitted to the normal procedure for the ascertainment of damages." Argument on the rule was heard by Judge TERPUTAC on May 27, 1980. Although not included in the record, Appellee subsequently filed a motion requesting that Judge TERPUTAC assign the petition for dismissal to President Judge SWEET and/or Judge GLADDEN, both of whom had as a two-judge court issued the March 7 order. Appellants aparently received no notice of the motion to transfer decision on the rule. On June 17, 1980 President Judge SWEET and Judge GLADDEN issued an order "affirming" their order of March 7. They interpreted the March 7 order as having dismissed the Appellants' equity complaint. The order of June 17 further directed that Appellants collect damages by way of the previously approved bonds. No opinion in support of this order was filed. The instant appeal followed.

---

[1] On April 16, 1980 Appellee filed a motion for dismissal of the equity complaint; however, no court action on that motion appears on the docket.

Upon their appeal to this Court, Appellants petitioned for temporary injunctive relief to prevent installation of the water line pending appeal and Appellee moved to dismiss the appeal as untimely. Both requests were denied by this opinion writer by order entered September 4, 1980.[2] Finally, on November 10, 1980 Appellee filed another motion to dismiss the appeal, this time for mootness due to the development that the contested water line had been installed on Appellants' properties during the week of October 6, 1980. By order dated December 2, 1980 this Court, per Judge PALLADINO, denied the motion.

The issue presented by Appellants in this appeal is whether or not the court below properly dismissed their equity complaint.

Appellants argue that they were denied due process of law when Appellee filed its motion, without notifying Appellants, for assignment of the rule to show cause to President Judge SWEET and Judge GLADDEN. Appellants apparently argue that Appellee's rule to show cause had been dismissed after oral argument by the hearing judge and that Appellee's motion for assignment effectively presented a second petition for dismissal to the Court. We cannot agree.

After oral argument on the rule to show cause on May 27, 1980, Judge TERPUTAC issued an order granting leave for counsel to file memoranda of law relative to the rule. He did not discharge the rule as contended by Appellants. Decision on the rule was merely reserved pending the filing of legal memoranda. Appellee's motion to transfer the assignment, therefore, related to the original rule on which

---

[2] Appellants filed a petition for review of this order with our Supreme Court which was denied. Appellants' petition for extraordinary relief filed with the Pennsylvania Supreme Court was likewise rejected.

Appellants had presented oral argument to Judge TERPUTAC. While we do not approve of Appellee's ex parte motion or the Court's unilateral transfer of decision on the rule to judges who did not hear oral argument, we need not rest our decision on those procedural flaws. Instead, we will reach the merits of the order issued on June 17, 1980.

Turning to that order, we note again that the court of common pleas interpreted its order of March 7, 1980 as having dismissed the *complaint* in equity. Without ruling on the validity of the court's interpretation of its own order, we recognize that as of June 17, 1980, Appellants' complaint was, indeed, dismissed. We conclude that the dismissal was improper.

Central to our determination is the fact that the relief requested by Appellants in their equity complaint was twofold, including both a challenge to the Appellee's exercise of its power of eminent domain and a request for injunction. Equally important is the fact that *easements* rather than interests in fee were condemned by Appellee. Had Appellee condemned interests in fee it would be clear that Appellants' exclusive remedy would be a statutory one pursuant to the Eminent Domain Code (Code).[3] *Valley Forge Golf Club v. Upper Merion Township*, 422 Pa. 227, 228, 221 A.2d 292, 293 (1966). Section 901 of the Code, 26 P.S. §1-901 provides, however, that, "This act shall not . . . repeal, modify or supplant any law insofar as it confers the authority or prescribes the procedure for condemnation of *rights-of-way or easements* for occupation by water . . . lines used directly or indirectly in furnishing service to the public." (Emphasis added.) Thus, those issues

---

[3] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-101 *et seq.*

raised by Appellants dealing with the scope and validity of the taking could not be raised by preliminary objections to a declaration of taking, the procedure mandated by Section 406(a) of the Code, 26 P.S. §1-406(a), since the Code is not applicable to a challenge to the taking of an easement. *Philadelphia Electric Co. v. Carr,* 4 Pa. Commonwealth Ct. 571, 580, 287 A.2d 917, 921-22 (1972).

The procedures which are applicable here are found in Section 41 of the corporation act of 1874, Act of April 29, 1874, P.L. 73, *as amended,* 15 P.S. §§3021-3023. Those procedures, however, do not provide a method for challenging the power or validity of a condemnation. The condemnation power of water companies is granted by Section 322 of the Business Corporation Law,[4] 15 P.S. §1322 and Section 34, cl. 2 of the corporation act of 1874, 15 P.S. §3241. Again, neither act provides a procedure by which the power to condemn may be challenged. That Appellants must be given an opportunity to challenge the legality of the taking is clear. *McConnell Appeal,* 428 Pa. 270, 272, 236 A.2d 796, 798 (1968). We must, accordingly, determine the form in which that challenge may be advanced.

Our Supreme Court in *Redding v. Atlantic City Electric Co.,* 440 Pa. 533, 269 A.2d 680 (1970) addressed an analogous fact situation. In *Redding* an electric public utility corporation had condemned an easement for a transmission line. Appellees filed an equity complaint seeking to permanently enjoin the public utility from taking possession of the right-of-way. The electric company filed preliminary objections to the complaint before the court of common pleas alleging that equity had no jurisdiction over

---

[4] Act of May 5, 1933, P.L. 364, *as amended,* added by Section 9 of the Act of August 27, 1963, P.L. 1381.

the matter. The Supreme Court affirmed the dismissal of those preliminary objections and in so doing recognized that while the Eminent Domain Code does not provide an avenue for challenging the taking of easements, equity does. Furthermore, in contrast to *Redding* where it was possible that the validity of a condemnation might be determined at the statutorily-required hearing before the Public Utility Commission,[5] equity is the only forum available to Appellants in the instant case. Thus, since it would be unconstitutional to deny Appellants the right to challenge the taking of their land, *McConnell Appeal,* we hold that Appellants' proper remedy is through an action in equity. Since their challenge was dismissed without trial and without reasons in support thereof we must reverse the dismissal of their complaint and remand for further proceedings in accordance with this opinion.

Finally, Appellee in its brief filed with this Court again argues that this appeal has been rendered moot by the fact that the disputed water line has been installed. As noted previously, that issue has already been resolved by order of Judge PALLADINO. No appeal has been taken from that ruling. Moreover, we repeat that Appellants must be given the opportunity to challenge the scope and validity of the initial con-

---

[5] Section 4 of the Act of May 8, 1889, P.L. 136, *as amended,* added by Section 1 of the Act of May 21, 1921, P.L. 1057, 15 P.S. §3272(b), which gives electric public utility corporations the power to condemn, requires that the Public Utility Commission determine prior to condemnation and after a public hearing whether the proposed service is necessary or proper for the public convenience. The Supreme Court in *Redding* held that the hearing requirement does not provide an exclusive or mandatory procedure by which a challenge to the validity and scope of the taking of an easement by an electric company is to be determined. The statutory remedy was found to be, at most, permissive or alternative.

demnation. If the lower court should find that the initial taking was improper, it may order whatever relief is appropriate and just pursuant to its equitable powers.

Order reversed and remanded.

### ORDER

AND Now, this 2nd day of July, 1981, the order of the Court of Common Pleas of Washington County, dated June 17, 1980 is hereby reversed and remanded for proceedings consistent with the foregoing opinion.