513 A.2d 593

Del-AWARE Unlimited, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 11, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, BARRY and COLINS.

Held: Affirmed. Application for reargument and petition for remand filed and denied.

*Robert J. Sugarman,* with him, *K. W. James Rochow, Sugarman & Hellegers,* for petitioner.

*Christine B. Garvey,* Assistant Counsel, with her, *Charles F. Hoffman,* Chief Counsel, *Louise A. Knight* and *Edward G. Bauer,* for respondent.

*Bernard Chanin,* with him, *Pamela S. Goodwin,* Of Counsel: *Wolf, Block, Schorr and Solis-Cohen,* for intervenor/respondent, Philadelphia Electric Company.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., August 13, 1986:

Once again, we must consider and dispose of a challenge to the construction of facilities to supply water for cooling a nuclear generating station in Limerick, Montgomery County, and meeting the citizens' requirements of Bucks and Montgomery Counties.

As before, we are obliged and intend to confine our consideration to the merits of the precise legal issues presented, despite the widespread public discussion and disagreement inspired by the construction. *See Sullivan v. County of Bucks,* 92 Pa. Commonwealth Ct. 213, 499 A.2d 678 (1985), and *Del-AWARE Unlimited, Inc. v. Department of Environmental Resources,* 96 Pa. Commonwealth Ct. 361, 508 A.2d 348 (1986).

As we wrote in *Sullivan* and *Del-AWARE,* the purpose of the Point Pleasant water diversion project (project) is to construct a system by which Delaware River water could be withdrawn by the Point Pleasant Pumping Station and pumped through a combined transmission main to the Bradshaw Reservoir and Pump House (Bradshaw). From Bradshaw, the proposed site of which is Plumstead Township, Bucks County, (1) water for public use by Bucks and Montgomery Counties would travel through the north branch transmission main, discharge into the North Branch Neshaminy Creek and flow along the creek to the north branch water treatment plant where it would be pumped, in part, to the North Penn and North Wales Water Authorities and (2) supplemental cooling water for the Limerick nuclear generating station, owned by the Philadelphia Electric Company (PECO), would be pumped

through the east branch transmission main, discharge into the East Branch Perkiomen Creek and flow along the creek to the Perkiomen Pump House where it would be withdrawn and pumped to Limerick. Supplemental cooling water is necessary because PECO is denied access to Schuylkill River water for several months each year.[1]

Del-AWARE Unlimited, Inc. (Del-AWARE),[2] now appeals a Pennsylvania Public Utility Commission (PUC) order determining that the proposed site of the Bradshaw pumphouse is reasonably necessary for the convenience or welfare of the public, thus exempting it from local zoning ordinance provisions under Section 619 of the Pennsylvania Municipalities Planning Code (Code).[3]

Our scope of review of a PUC decision is limited to a determination of whether an error of law has been committed, constitutional rights have been violated or any findings of fact are unsupported by substantial evidence. *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980).

---

[1] The Delaware River Basin Commission has prohibited PECO from withdrawing Schuylkill River water when flows and/or temperatures fall below specified levels.

[2] Del-AWARE is a citizens' group seeking to protect the Delaware River.

[3] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10619. This section provides:

This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

Del-AWARE contends that the PUC's finding that the proposed site of the Bradshaw pumphouse is reasonably necessary for the public convenience or welfare is unsupported by substantial evidence. Specifically, it avers that Bradshaw is not necessary because PECO's needs could be met by readily available, cheaper and less environmentally harmful alternatives to the diversion of Delaware River water. However, Section 619 pertinently provides that the Code shall not apply to a proposed public utility building if, upon petition of the utility, the PUC decides that its site is reasonably necessary for the public convenience or welfare. We do not interpret this provision as requiring the PUC to reevaluate the entire project. It merely directs the PUC to determine whether the *site* of the Bradshaw pumphouse is appropriate to further the public interest.[4] Our review of the record reveals substantial evidence supporting the PUC's finding of reasonable necessity for the site.

---

[4] In its discussion, the PUC stated:

[I]t is difficult to envision a situation in which any exposition of the subject of the need for a building at a particular location, would not also result in the exposition of the underlying need for the building itself. PECO's position is that the need for the building must be assumed as a given; that it is not subject to inquiry, and that the Commission's inquiry is limited to the proposed location. We find that such a position is unreasonable, for it urges a position which could result in the Commission finding that although a building was not 'reasonably necessary for the convenience or welfare of the public', its proposed location or situation was 'reasonably necessary for the convenience or welfare of the public.'

We disagree with the PUC's reasoning. Section 619 only *empowers* the PUC, upon petition, to decide if there is reasonable necessity for the *site*. Moreover, the purpose of the inquiry is only to determine whether an exception to the local zoning provisions applicable to that site is justified. Therefore, the location, not the building

Del-AWARE also contends that the PUC did not properly review Bradshaw's environmental impact under PA. CONST. art. I, §27 pursuant to the three-prong test of *Payne v. Kassab*, 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd*, 468 Pa. 226, 361 A.2d 263 (1976). However, this Court has held that Section 27 cannot legally operate to expand the powers of a statutory agency. *Borough of Moosic v. Pennsylvania Public Utility Commission*, 59 Pa. Commonwealth Ct. 338, 429 A.2d 1237 (1981). The *Moosic* Court viewed this section as "self-executing only as it applies to the commission's regulation of a utility's own conduct which is *within the ambit of the regulatory jurisdiction of the commission as created by statute* and directly affects the environment." (Emphasis deleted; emphasis added.)

In this case, the PUC is empowered *only* to decide whether the proposed *site* of the Bradshaw pumphouse is reasonably necessary for the public convenience or welfare. Therefore, we hold that it may evaluate only the environmental impacts of placing the pumphouse at the proposed location. Although Del-AWARE argues that the PUC should have considered the impacts of (1) the pumphouse architecture and location on aesthetics, (2) noise from the pumphouse, (3) the Bradshaw reservoir and (4) the pumphouse and reservoir on the East Branch Perkiomen Creek, the Department of Environmental Resources (DER), as upheld by the Environmental Hearing Board (EHB), evaluated many of these environmental impacts[5] when granting the permits nec-

---

itself, is the focus of concern. This position would not result in contradictory findings by the PUC regarding the building and site because the PUC is simply not empowered to evaluate the building.

[5] We hold that the PUC itself adequately considered the aesthetic effects of the pumphouse (the PUC was satisfied by PECO's statements that it constructed for durability, security, sound attenu-

essary to construct the project. This Court thoroughly scrutinized and upheld EHB's review of DER's actions in *Del-AWARE*. We now hold that (1) the PUC was obliged to defer to DER's evaluation of environmental impacts within its jurisdiction, (2) there was a reasonable effort to reduce the environmental incursion caused by the pumphouse site to a minimum and (3) any alleged harm from the pumphouse site is clearly outweighed by its benefits.[6]

There is substantial record evidence to support the PUC's findings and it committed no error of law.

Affirmed.

### ORDER

The Pennsylvania Public Utility Commission order, No. A-00103956 dated May 13, 1985, is affirmed.

Judge COLINS dissents.

Judge PALLADINO did not participate in the decision in this case.

_____

ation and *attractiveness* and would landscape) and its potential noise (the PUC was satisfied that the pumphouse motors' noise would not interfere with area private property use).

Moreover, Del-AWARE's argument that the PUC should have considered the impacts of the reservoir because it is physically and functionally related to the pumphouse is meritless. *Only* public utility buildings are subject to local zoning requirements. *Commonwealth v. Delaware and Hudson Railway Co.,* 19 Pa. Commonwealth Ct. 59, 339 A.2d 155 (1975). Because the reservoir is not a "building," it does not require (1) a PUC determination that its site is reasonably necessary for the public convenience or welfare in order to avoid local zoning provisions or (2) a corresponding evaluation of its environmental impacts. Indeed, the proposed location of the reservoir supports the reasonable necessity of locating the pumphouse at its proposed site.

[6] Del-AWARE concedes that the first prong of the *Payne* test is inapplicable.